UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JESSICA DESPARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:14-cv-1987-WTL-DML |
| | ) |
| THE BOARD OF TRUSTEES OF | ) |
| INDIANA UNIVERSITY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ENTRY ON DEFENDANTS' MOTION TO DISMISS

Before the Court is the Defendants' fully briefed Motion to Dismiss (Dkt. No. 12).  The

Court, being duly advised, now **GRANTS** the Defendants' motion for the reasons set forth

below.

### I.     RULE 12(b)(6) STANDARD

The Defendants move to dismiss the Plaintiff's Complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6), arguing that the Complaint fails to state a claim for which relief can be

granted.  In reviewing a Rule 12(b)(6) motion, the Court "must accept all well pled facts as true

and draw all permissible inferences in favor of the plaintiff." *Agnew v. National Collegiate*

*Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012).  For a claim to survive a motion to dismiss for

failure to state a claim, it must provide the defendant with "fair notice of what the . . . claim is

and the grounds upon which it rests." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (omission in original).  A complaint must "contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Agnew*, 638 F.3d at 334 (citations omitted).  A complaint's factual allegations are plausible if

1

they "raise the right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 556 (2007).

## II.    BACKGROUND

### A.    Plaintiff's Factual Allegations

Relevant facts as alleged in the Plaintiff's Complaint and brief follow and are presumed

to be true for purposes of this Entry.  In 2011, the Plaintiff began attending Indiana University

Purdue University – Indianapolis ("IUPUI") as a psychology major.  In Fall 2011, the Plaintiff

was diagnosed with Asperger's syndrome.

The following year, in Fall 2012, the Plaintiff began working as a Teaching or Research

Associate in IUPUI's psychology department.  She worked as a Research Associate for

Defendant Milena Petrovic, a professor in the IUPUI psychology department.  She also took a

Research Methods class taught by Petrovic in Spring 2014.

On or about April 23, 2014, due to her Asperger's syndrome, the Plaintiff had a

"meltdown," making "what could be considered 'unprofessional' comments" in an evaluation of

a peer in a small research group.[1]  Compl. ¶¶ 15-16.  In late May 2014, the Plaintiff received an

email from Defendant Margaret S. Stockdale, chair of the IUPUI psychology department,

instructing the Plaintiff not to communicate with Petrovic.  In June 2014, IUPUI's Office of

Equal Opportunity ("OEO") met with the Plaintiff to discuss the instruction not to communicate

with Petrovic.  A week later, OEO explained to the Plaintiff that she was instructed not to

communicate with Petrovic because Petrovic felt that the Plaintiff was harassing and stalking

her.  The Plaintiff was told that she was "seen everywhere" in the department and in the hall

---

[1]  Although the Plaintiff does not so allege, the Court assumes that the small research
group was related to the Research Methods course taught by Petrovic.

outside a classroom where Petrovic was teaching.  *Id.* ¶ 20.  Following the Plaintiff's meeting

with OEO staff, she also had a discussion with Dr. Joseph Thompson in IUPUI's School of

Science's Dean's Office.  In July 2014, the Plaintiff was told not to "loiter near . . . classrooms

where [Petrovic] teaches" and that "she was limited to 'occasional' use of a student seating area

for the [psychology] [d]epartment's offices."  *Id.* ¶¶ 22-23.

The Plaintiff observed these restrictions for the first two weeks of the Fall 2014 semester,

"avoid[ing] the [p]sychology [d]epartment as much as possible," but then stopped, instead

"resum[ing] her previous habit of studying on the couch in the [p]sychology [d]epartment seating

area."  *Id.* ¶¶ 24.  On September 18, 2014, Stockdale emailed the Plaintiff to tell her to "refrain

from working" in the seating area.  *Id.* ¶ 25.  Other students have not been similarly restricted,

and no formal complaint or charge has been filed against the Plaintiff.

### B.      The Lawsuit

On December 2, 2014, the Plaintiff filed suit in this Court, seeking legal and injunctive

relief[2] for violations of the Fifth and Fourteenth Amendments as well as violations of the

Americans with Disabilities Act, as amended, and Section 504 of the Rehabilitation Act.

Specifically, the Plaintiff asserts the following claims: (1) against Defendants Petrovic and

Stockdale pursuant to 42 U.S.C. § 1983, due process and equal protection violations under the

Fifth and Fourteenth Amendments and violation of the Rehabilitation Act;[3] (2) against

---

[2]  The Court notes that, in the Defendants' Motion for Continuance and Request to
Reschedule Settlement Conference (Dkt. No. 34), they state that "Plaintiff is on course for
graduation and is scheduled to complete her work toward a degree this month which will make
her eligible to graduate." It appears that, if the Plaintiff graduates from IUPUI or has finished her
coursework within the psychology department, the Plaintiff's requests for injunctive relief are
moot.
[3]  Defendants argue that the claims against Stockdale in her official capacity are barred
by the Eleventh Amendment and that both Stockdale and Petrovic are entitled to qualified

Defendant Board of Trustees of Indiana University, violation of Title II of the ADA;[4] and (3)

against Defendants Board of Trustees of Indiana University and IUPUI, violation of the

Rehabilitation Act.  The Defendants have now moved to dismiss all claims against them.

### III.    DISCUSSION

As an initial matter, the Plaintiff concedes that IUPUI is an improper party to this lawsuit.

*See* Dkt. No. 20 at 3.  Accordingly, IUPUI is dismissed.  Additionally, the Court notes that,

because of the haphazard presentation of the Plaintiff's allegations, it has done its best to piece

together the Plaintiff's claims and legal theories from both the Complaint and the Plaintiff's

response to the instant motion.  Any legal theories or claims not clearly articulated by the

Plaintiff have been forfeited, as "[i]t is not this court's responsibility to research and construct

the parties' arguments."  *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011).

### A.    Procedural Due Process

The Plaintiff asserts that she has enforceable liberty and property interests in her right to

study in IUPUI's psychology department facilities and that Defendants Petrovic and Stockdale

"placed substantial restrictions" on her access to them even though "no formal complaint or

charge was filed," and the Plaintiff was "never afforded an opportunity to be heard with respect

to the restrictions," all in violation of the Fifth and Fourteenth Amendments.  Compl. ¶¶ 27, 29.

The Due Process Clause of the Fourteenth Amendment applies to certain state actors.  It

provides that "[n]o State ... shall ... deprive any person of life, liberty, or property, without due

---

immunity with respect to the claims brought against them in their individual capacities.  The
Court need not address either argument to resolve the Defendants' motion.
    [4]  The Plaintiff incorrectly cites to 42 U.S.C. § 121311 *et seq.* in paragraph 37 of her
Complaint, which the Court assumes to be a reference to Title II of the ADA.  *See* 42 U.S.C. §
12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be
excluded from participation in or be denied the benefits of the services, programs, or activities of
a public entity, or be subjected to discrimination by any such entity").

process of law." U.S. CONST. amend. XIV, § 1.  The Plaintiff does not fully articulate her due

process claim in her Complaint or subsequent briefing.  As best as it can discern, the Court

concludes that the Plaintiff asserts a procedural due process violation against Stockdale in her

official and individual capacities and Petrovic in her individual capacity.  In examining a

procedural due process claim, the Court performs a two-step inquiry, determining: (1) whether

the Plaintiff was deprived of a liberty or property interest; and (2) if so, what process was due.

*McMahon v. Kindlarski*, 512 F.3d 983, 987-88 (7th Cir. 2008) (citing *Brown v. City of Michigan*

*City*, 462 F.3d 720, 728 (7th Cir. 2006) (citation omitted)).  The Plaintiff's claims fail at the first

step: her allegations do not support a finding that she was deprived of any liberty or property

interest.

### 1.     *Liberty Interest*

The Supreme Court has assumed, arguendo, the existence of a liberty interest in higher

education at a public university, and this Court will do so as well.  *See Bd. of Curators of the*

*Univ. of Mo. v. Horowitz*, 435 U.S. 78, 82-85 (1978) (assuming the existence of a liberty or

property interest for the purpose of analyzing petitioner's due process claim).  The Plaintiff

explicitly states that her "due process claim does not allege that she is being denied an

education" and that she agrees with the Defendants that she did not "'plead that she has a

fundamental constitutional right to an education.'"[5]  Dkt. No. 20 at 5.  Instead, the Plaintiff

---

[5] In direct contradiction, the Plaintiff later states in the same brief that "[i]t is reasonable
to infer that … [the Plaintiff] has suffered [] at least some degree of interference with obtaining
her education" and that "[i]nterference with [the Plaintiff]'s ability to complete the requirements
to obtain her degree can reasonably be assumed to be a denial of her state-created right …."  Dkt.
No. 20 at 8.  The facts alleged by the Plaintiff do not support this inference, however, and "it is
not enough to give a threadbare recitation of the elements of a claim without factual support.
*Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) (citing *Tamayo v.
Blagojevich*, 526 F.3d 1074, 1082-83 (7th Cir. 2008)).

claims a liberty interest "with respect to her right to study and to use the resources and facilities of the [p]sychology [d]epartment." *Id.* She cites no authority creating such an interest, but attempts to create it by analogy to the established liberty interest in occupation found in *Allgeyer v. State of La.*, 165 U.S. 578, 589 (1897). "'The concept of liberty protected by the due process clause has long included occupational liberty—the liberty to follow a trade, profession, or other calling.'" *Hinkle v. White*, --- F.3d ----, 2015 WL 4297887, at *2 (7th Cir. July 16, 2015) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992)). The Plaintiff argues: "[f]or a college student, studying is no less important than working is for non-students." Dkt. No. 20 at 5.

Even assuming that that a liberty interest in "studying" exists, the Plaintiff has not alleged that she was deprived of the right to "study," but rather that she was prevented from studying in the psychology department office. However, "[i]t is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." *Wroblewski*, 965 F.2d at 455. Extending the Plaintiff's analogy, the Plaintiff's liberty interest would lie in her right to study generally, not in a right to study at a particular institution or in a particular academic program, and certainly not in a right to study in a particular manner or physical location on campus. The Court finds as a matter of law that Plaintiff does not have a liberty interest in studying in the psychology department office, and therefore, she has not stated a claim for a violation of her due process rights with respect to studying.

Although not articulated in her Complaint, the Plaintiff appears to claim in response to the Defendants' Motion that she was also deprived of a liberty interest with respect to her good name, reputation, honor, or integrity, when she was accused of harassing and stalking Petrovic. "[I]nterest in reputation . . . is neither a 'liberty' nor 'property' guaranteed against state

deprivation without due process of law." *Paul v. Davis*, 424 U.S. 693, 711-12 (1976).  The

Supreme Court, however, has held that a state may infringe on a plaintiff's liberty interest in

certain *employment* situations:  where it makes a "charge against [a person] that might seriously

damage his standing and associations in his community," places "a person's good name,

reputation, honor, or integrity … at stake," or creates "a stigma or other disability that

foreclose[s] [a person's] freedom to take advantage of other employment opportunities."  *Bd. of*

*Regents v. Roth*, 408 U.S. 564, 573 (1972).  To implicate such a liberty interest, "the employee's

good name, reputation, honor, or integrity must be called into question in such a way as to make

it virtually impossible for the employee to find new employment in his chosen field."  *Head v.*

*Chicago Sch. Reform Bd. of Trs.*, 225 F.3d 794, 801 (7th Cir. 2000).  Defamation "does not

deprive a person of 'liberty' protected by the Fourteenth Amendment, even when it causes

serious impairment of one's future employment."  *Hinkle*, --- F.3d ----, 2015 WL 4297887, at *3

(citing *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002)).  Rather, "charges of

defamation must be coupled with the alteration of a legal status, such as loss of employment."

*Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001), citing *Paul*, 424 U.S. at 710; *see also*

*Mann v. Vogel*, 707 F.3d 872, 878 (7th Cir. 2013).

Here, the Plaintiff does not allege that her ability to secure employment has been

impaired as a result of being accused of harassing or stalking; nor has she alleged any change in

legal status.  For example, she does not allege that she was discharged from employment as a

teaching or research assistant, expelled from IUPUI, or otherwise removed from pursuing her

studies in the psychology program.  *See, e.g.*, *McMahon v. Kindlarski*, 512 F.3d 983, 988 (7th

Cir. 2008) (finding no deprivation of a liberty interest where student did not allege as a change of

legal status that he was expelled from university or a particular academic department).  For these

reasons, the Plaintiff has also failed to state a claim regarding a liberty interest with respect to her good name, reputation, honor, or integrity.

### 2.        Property Interest

The Plaintiff claims a property interest in "access to, and use of, the [psychology] [d]epartment's facilities." Compl. ¶ 27. Whether these are constitutionally protected property interests has not been addressed by the Seventh Circuit. The Seventh Circuit, however, has rejected the idea of a student's unqualified property interest in a state-university education. *Williams v. Wendler*, 530 F.3d 584, 589 (7th Cir. 2008); *see also Charleston v. Bd. of Trs. of Univ. of Ill. at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013) ("[O]ur circuit has rejected the proposition that an individual has a stand-alone property interest in an education at a state university."), *cert. denied*, 134 S. Ct. 2719 (2014); *Bissessur*, 581 F.3d at 601 ("A graduate student does not have a federal constitutional right to a continued graduate education."). An exception exists, however, where a student can show a legal entitlement through either an express or implied contract between the student and the educational institution. *Williams*, 530 F.3d at 589 (citations omitted). The "student must 'point to an identifiable contractual promise that the [university] failed to honor.'" *Bissessur*, 581 F.3d at 602 (quoting *Roth*, 408 U.S. at 574 (additional internal citations omitted)).

In her Complaint, the Plaintiff points to no such contract. In response to the Defendants' Motion, however, the Plaintiff's brief can be read as suggesting that Indiana University's Code of Student Rights, Responsibilities, and Conduct ("Code") serves as a contract that guarantees her access to the psychology department's seating area and faculty, which she contends is the "state-created right" from which her constitutionally protected property interest extends. Dkt. No. 20 at 8. The Code states, in relevant part, that students shall have the right to "'have access

to faculty, academic technology, classrooms, libraries, presentations, and other resources necessary for the learning process.'" *Id.* (quoting Code of Student Rights, Responsibilities, and Conduct, Part I (A), http://www.indiana.edu/~code/code/rights/education/index.shtml). Although the Plaintiff does not allege a breach of contract claim, she suggests that, as a result of the restrictions the Defendants placed on her, she was denied privileges to which she was entitled under the Code.

Assuming for purposes of this Entry that the Code established a contract with the Plaintiff, the facts alleged do not demonstrate that this contract was breached. The Code states that students shall have the right to access "faculty, classrooms, … and other resources *necessary for the learning process*." *Id.* A student's unrestricted access to a department's seating area and faculty (for classes in which the students is not currently enrolled and for whom the student is not currently working) are not "necessary for the learning process."[6] As noted above, the Plaintiff herself explicitly states that her "due process claim does not allege that she is being denied an education." Dkt. No. 20 at 5. If the Code has not been violated, the Plaintiff has not been denied access to resources necessary for the learning process. There is no indication that the Plaintiff did not have access to any faculty, classrooms, and other resources necessary for her learning process. Instead, the Plaintiff was denied access to Petrovic and was instructed to "'refrain from working in [the psychology department seating area],'" where she had a "habit of studying on the couch." Compl. ¶¶ 19, 24-25. Despite the Plaintiff's arguments to the contrary, these allegations are not sufficient to state a claim for deprivation of a property interest.

_____

[6] The Court infers that the Plaintiff was not enrolled in Petrovic's courses or working as her assistant when she was subjected to restrictions, inasmuch as she states in the past tense that Petrovic "had not only been [the Plaintiff]'s teacher," but that the Plaintiff also "had worked as a Teaching Assistant/Research Assistant." Dkt. No. 20 at 7.

For the reasons set forth above, the Defendants' Motion to dismiss is **GRANTED** as to the Plaintiff's procedural due process claim.

### B.       Equal Protection

The Plaintiff alleges a claim against Defendants Stockdale and Petrovic under the Equal Protection Clause.  The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall … deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  The Plaintiff's Complaint does not articulate whether she is alleging an equal protection violation on the basis of her alleged disability or as a class of one.  In response to the Defendants' Motion, however, the Plaintiff clarifies that she makes her claim as a person with a disability.  As discussed previously, in evaluating the Plaintiff's claim, the Court considers allegations presented in the Plaintiff's response to the Defendants' Motion as well as those alleged in the Plaintiff's Complaint.  *See Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) ("[i]n conducting our review, we must consider not only the complaint itself …. We also must considered additional facts set forth in [the plaintiff's] … briefs, so long as those facts are consistent with the pleadings" (citations and internal quotation marks omitted)).  As a result, the Court finds that the Plaintiff brings a claim for an equal protection violation based on her status as a person with a disability.

In analyzing the Plaintiff's equal protection claim, the Defendants apply the indirect, burden-shifting framework first developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for Title VII employment discrimination claims.  The Plaintiff does not challenge that proposition and appears to apply that same test in response to the Defendants' Motion.  As a result, the Court assumes, without deciding, that this framework is applicable in this instance.

10

*See Charleston*, 741 F.3d at 775 (applying *McDonnell Douglas* framework); *Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 926 (7th Cir. 2007) (same); *Williams v. Seniff,* 342 F.3d 774, 788 (7th Cir. 2003) (same).  Under this framework, to establish a prima facie case of discrimination under the Equal Protection Clause, the Plaintiff must show that she is a member of a protected class, that she was treated differently from similarly situated individuals outside the protected class, and that the Defendants acted with discriminatory intent.  *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993).

A review of the allegations found in the Plaintiff's Complaint and in her response to the instant motion reveals that the Plaintiff fails to offer facts that plausibly support allegations of an equal protection violation; in other words, the Plaintiff's allegations fail to satisfy the *Twombly*/*Iqbal* plausibility standard, which requires "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Plaintiff pleads, in relevant part, that she was diagnosed with Asperger's syndrome in Fall 2011 and had "a 'meltdown' due to her Asberger's [sic] Syndrome" in April 2014. Compl. ¶¶ 11, 15-16.  "Stockdale and Petrovic have placed substantial restrictions on [her] access to, and use of, the Department's facilities," "[o]ther students have not been subjected to those substantial restrictions," and "[t]he actions of Stockdale and Petrovic were intentional, willful, and in reckless disregard for Valentino's [sic] rights."  Compl. ¶¶ 27-28, 32.  Rather than presenting facts, the Plaintiff presents only unsupported legal conclusions, which are precisely the type of allegations rejected by the Supreme Court in *Twombly* and *Iqbal*.

Specifically, under the test applied by the parties, the Plaintiff is required to plead facts showing that she is similarly situated to students who are not members of her protected class. *McNabola*, 10 F.3d at 513.  The Plaintiff simply fails to do so.  Instead, without any supporting

11

facts, she simply alleges that "[o]ther students have not been subjected to those substantial restrictions [to which the Plaintiff was subjected]."  Compl. ¶ 28.  There is no suggestion, in either her Complaint or response to the Defendants' Motion, that the "other students" mentioned are similarly situated.  "Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

In her response to the instant motion, the Plaintiff attempts to remedy her Complaint by arguing that "[u]nless one makes the completely unreasonable assumption that *all* students in the Psychology Department have Asperger's, then [the Plaintiff] has alleged she is similarly situated to other students (*i.e.*, undergraduates in the Psychology Department), who are not in [the Plaintiff]'s protected class (*i.e.*, do not have Asperger's Syndrome)" and that this allegation suffices for purposes of alleging an equal protection claim.  Dkt. No. 20 at 16.  It does not.  *See, e.g.*, *Park*, 693 F.3d at 832-33 (7th Cir. 2012) (affirming dismissal of class of one equal protection claim where "there [was] no reason to suppose that [students who were party to a cheating scandal and received a less harsh punishment] are comparable to [the plaintiff]"); s*ee also Charleston*, 741 F.3d at 775 (affirming dismissal of class of one equal protection claim where plaintiff's complaint "tells us nothing about these 'similarly situated [] students'").

In order to survive a motion to dismiss, the Plaintiff needed to allege facts regarding at least one similarly situated comparator, that is, a student without a disability who falls into one of two categories.  First, as alleged in the Plaintiff's Complaint, the Defendants imposed restrictions on the Plaintiff "because Petrovic allegedly felt that [the Plaintiff] was 'harassing' and 'stalking' her."  Compl. ¶ 19.  Under this scenario, a similarly situated student is not simply one who is an undergraduate in the psychology department who does not have Asperger's syndrome, but rather a non-disabled undergraduate student in the psychology department who was accused of stalking

and harassing a professor but was not subjected to the same departmental restrictions as the Plaintiff.  *See, e.g., Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014) (suggesting, in dicta, specific factual content that may have allowed Court to conclude that plaintiff properly stated a disparate treatment claim).  The Plaintiff, however, presented no such facts in her Complaint or brief.

Second, the Plaintiff argues in her brief that "the restrictions were imposed on her as a result of her Asperger's-related meltdown."  Dkt. No. 20 at 18.  Under this scenario, the Plaintiff would have had to have presented facts regarding at least one individual who is not disabled, but who experienced meltdowns or "made what could be considered 'unprofessional' comments in a peer evaluation" and was treated more favorably.  Such factual allegations regarding similarly situated students are necessary to properly plead the Plaintiff's equal protection claim.  *See Park*, 693 F.3d at 832-33 (affirming dismissal of class of one equal protection claim where plaintiff did not provide facts showing similarly situated comparators); *see also Adams*, 742 F.3d at 733 (dismissing Title VII claim where plaintiff presented only conclusory allegations of disparate treatment); *Charleston*, 741 F.3d at 775 (finding that complaint alleging that plaintiff was "retaliated against, harassed, disciplined against, intimidated, and dismissed from the medical school, all ... differently than those similarly situated medical students subjected to the [Student Progress Committee] review process" required "further factual enhancement" to support a class of one equal protection claim).  The Plaintiff simply has failed to plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  As a result, the Defendants' motion to dismiss is **GRANTED** as to the Plaintiff's Equal Protection claim.

### C.      ADA and Rehabilitation Act Claims

The Plaintiff alleges a claim against the Defendant Board of Trustees of Indiana

University under Title II of the ADA and against all Defendants under Section 504 of the

Rehabilitation Act.  Title II of the ADA provides that "no qualified individual with a disability

shall, by reason of such disability, be excluded from participation in or be denied the benefits of

the services, programs or activities of a public entity, or be subjected to discrimination by any

such entity."  42 U.S.C. § 12132.  Similarly, Section 504 of the Rehabilitation Act provides that

"[n]o otherwise qualified individual with a disability in the United States … shall, solely by

reason of her or his disability, be excluded from the participation in, be denied the benefits of, or

be subjected to discrimination under any program or activity received Federal financial

assistance."  29 U.S.C. § 794(a).  "The statutes are coextensive" and are analyzed in the same

manner.  *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014).

Assuming for purposes of this Entry that the Plaintiff has a disability, is qualified to

participate in a program covered by the statute, and was excluded from that program, the

Plaintiff has not alleged facts, nor can she, showing that she was excluded from participating *by*

*reason of her disability*.  Instead, the Plaintiff alleges only that "the restrictions were imposed on

her as a result of her Asperger's-related meltdown."  Dkt. No. 20 at 18.  As a result, she has pled

herself out of court.

It is well established in the Seventh Circuit that "[a]n employer may fire [or discipline] an

employee for engaging in unacceptable workplace behavior without violating the ADA (or the

Rehabilitation Act), even if the behavior was precipitated by a [disability]."  *Brumfield v. City of*

*Chicago*, 735 F.3d 619, 630-31 (7th Cir. 2013) (collecting cases); *see also Budde v. Kane County*

*Forest Pres.*, 597 F.3d 860, 862 (7th Cir. 2010) (affirming summary judgment in employer's

favor where misconduct caused by disability led to employee's termination); *Pernice v. City of Chicago*, 237 F.3d 783, 787-88 (7th Cir. 2001) (affirming dismissal of complaint where employee admitted being terminated for violating employer rules, even though his disability precipitated the rule violation); *Palmer v. Circuit Court of Cook County, Ill.*, 117 F.3d 351, 352 (7th Cir. 1997) (upholding termination of employee whose inappropriate behavior toward co-workers was triggered by mental illness).  Student claims brought under the ADA or Rehabilitation Act can be measured by the same standard.  *See, e.g., Tylicki v. St. Ong*, 297 Fed. Appx. 65, 67 (2d Cir. 2008) ("[T]he ADA and Rehabilitation Act permit [the Defendants] to discipline a student even if the student's misconduct is the result of a disability.").  The Plaintiff has directly alleged that she was subject to restrictions because of her meltdown, i.e., inappropriate conduct, not because of a disability.  As a result, she has pled herself out of court, and the Defendants' motion to dismiss is **GRANTED** as to this claim as well.

### IV.    CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss (Dkt. No. 12) is **GRANTED** in its entirety.  Ordinarily, plaintiffs are given an opportunity to file an amended complaint that corrects the deficiencies in the current complaint.  *See Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) ("The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim.") (quotation marks and citation omitted).  Such an opportunity, however, is not provided where "it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Id.*; *see also Forman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend may be

denied based on undue delay, bad faith, undue prejudice, or futility); *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 860-61 (7th Cir. 2001) (same); *Ferguson v. Roberts*, 11 F.3d 696,706 (7th. Cir. 1993) (same).  The Plaintiff's due process, ADA, and Rehabilitation Act claims are inherently futile because she would be unable to succeed on those claims for the reasons previously discussed:  Studying in a particular location is not a liberty or property interest requiring due process, and being placed under restrictions because of a "'*meltdown*' due to [] Asberger's [sic] Syndrome," rather than because of a disability, cannot support a claim of discrimination.  Therefore, the Plaintiff's due process, ADA, and Rehabilitation Act claims are **DISMISSED WITH PREJUDICE**.

The Plaintiff's equal protection claim, however, is **DISMISSED WITHOUT PREJUDICE**, and no final judgment will enter at this time in order to give the Plaintiff an opportunity to file an amended complaint that corrects the deficiencies related to this claim.  If Plaintiff wishes to continue with this suit, she shall file an amended complaint **within 14 days of the date of this Entry**.  **The failure to file a timely amended complaint will result in final judgment being entered against the Plaintiff in this case.**

SO ORDERED: 8/18/15

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification.

16